IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JORGE LASALLE, <u>et al.</u>,**<br><br>    Plaintiffs,<br><br>    v.<br><br>**THE PUERTO RICO ELECTRIC POWER AUTHORITY, <u>et al.</u>,**<br><br>    Defendants. | **CIVIL NO. 14-1861 (PAD)** |

**OPINION AND ORDER**

Delgado Hernández, District Judge.

Jorge LaSalle was suspended from his employment with the Puerto Rico Electric Power Authority ("PREPA"). Together with his wife and their legal conjugal partnership, he initiated this action against PREPA and a number of individual defendants alleging violations of the First, Fifth and Fourteenth Amendments, and of Puerto Rico law (Docket No. 4). Before the court is defendants' "Motion to Dismiss" (Docket No. 18), which plaintiffs opposed (Docket No. 25). For the reasons below, the motion is GRANTED and plaintiffs' claims DISMISSED.

**I.    BACKGROUND**

LaSalle is a member of a PREPA workers union (UTIER by its Spanish acronym), and of the Popular Democratic Party ("PDP"). In 1974 he began working for PREPA (Docket No. 4 at ¶ 28-29). At some point between 1977 and 1984 he was dismissed, but in 2013 was reemployed. Id. at ¶¶ 32, 45, 54.

On August 19, 2013, LaSalle and about a dozen other PREPA employees were escorted to a PREPA office, where he and at least three (3) employees were handed a letter informing them that they had (1) repeatedly been late; (2) misused PREPA property; (3) falsified documents; (4) limited PREPA's production; (5) committed theft and embezzlement; and (6) abandoned his

employment.  Id. at ¶¶ 57, 65-68; See also, Olivencia v. PREPA, Civ. No. 13-1844 (PAD-MEL), Docket No. 1 at ¶ 56; Lugo v. PREPA, Civ. No. 14-1618 (PAD), Docket No. 1 at ¶ 54; Rodríguez v. PREPA, Civ. No. 14-1753 (CCC), Docket No. 1, at ¶ 54.[1]  In the same way, LaSalle was charged with violating Rules of Conduct Nos. 1, 17, 24, 27, and 31, and Note 1.  See, Docket No. 21, Exh. 1 at p. 1.

During a disciplinary hearing LaSalle answered basic questions like his name and address, but was advised to invoke his right not to testify when questioned about the alleged misconduct. After the hearing, he was suspended and his medical insurance cancelled (Docket No. 4 at ¶¶ 107, 109-111).[2]  Later, a union representative told him that in order to return to work, he had to sign a statement implicating Nydia Soto – LaSalle's previous supervisor, who is a member of the New Progressive Party ("NPP").  Id. at ¶¶ 120, 128.

To that end, LaSalle signed a settlement agreement stating that he would serve as a witness in disciplinary proceedings resulting from an investigation against managerial employees.  In exchange, PREPA would withdraw the charges for violations to the Rules of Conduct, upon LaSalle's executing a sworn statement about the facts he was alleged to have committed.  Finally, LaSalle waived any right, claim or legal or administrative cause of action that may arise from these facts against PREPA with regards to the facts stated in the Agreement.  Id. at ¶ 12 and ¶ 137; Docket No. 21, Exh. 1.[3]

---

[1] Plaintiffs refer to these cases in Docket No. 1 at ¶ 14.  In passing upon a motion to dismiss for failure to state a claim, the court may consider matters susceptible of judicial notice.  Andrew Robinson v. Hartford Fire Insurance, 547 F.3d 48, 51 (1st Cir. 2008).

[2] It is unclear from the complaint whether LaSalle was suspended with or without pay.  Compare, Id. at ¶¶ 7, 22, and 111.  And if he was suspended "with and then without pay" as alleged in ¶ 22, it is unclear at what point that happened.

[3] Barring narrow exceptions, the court may not consider documents outside the pleadings when evaluating a motion to dismiss, unless they are attached to the complaint, or are expressly incorporated therein.  Foley v. Wells Fargo Bank, 772 F. 3d 63, 71-72 (1st Cir. 2014).  The settlement agreement is referred to in the Complaint (Docket No. 4 at ¶ 12,

Later, codefendant David Meléndez told union employees during a meeting that they had to testify against their NPP-affiliated supervisors. LaSalle complained they had been threatened with criminal charges if they failed to so testify, but Meléndez told him that LaSalle would not make a good witness for PREPA (Docket No. 4 at ¶¶ 144-145).

Plaintiffs state defendants' actions were baseless, and in violation of La Salle's fundamental constitutional rights pursuant to 42 U.S.C. § 1983. Id. at ¶¶ 1, 5. Additionally, they argue defendants conspired between them and with UTIER to violate those same rights. Id. at ¶¶ 19, 21-25. In turn, defendants request dismissal under Fed.R.Civ.P. 12(b)(6) (Docket No. 18).

## II.   STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must allege a plausible entitlement to relief. Rodríguez-Vives v. Puerto Rico Firefighters Corps., 743 F.3d 278, 283 (1st Cir. 2014); Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013); Rodríguez-Ortiz v. Margo Caribe, 490 F.3d 92, 95 (1st Cir. 2007). Plausibility involves a context-specific task calling on courts to examine the complaint as a whole, separating factual allegations (which must be accepted as true) from conclusory allegations (which need not be credited). García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013); Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012).

While detailed factual allegations are not required, more than labels and conclusions are needed. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Bare bones recitals of the elements of a cause of action or unadorned factual assertions as to those elements will not do. Mead v. Independence Ass'n, 684 F.3d. 226, 231 (1st Cir. 2012); Peñalbert-Rosa v. Fortuño-

---

¶137, and ¶139). A copy of it is attached to the motion to dismiss (Docket No. 21, Exh. 3). Since factual allegations are linked to the agreement and its authenticity has not been challenged, the court has reviewed the document in determining whether the complaint should be dismissed under Fed.R.Civ.P. 12(b)(6). See, Diva's v. City of Bangor, 411 F.3d 30, 38 (1st Cir. 2005)(so authorizing under those circumstances to permit review of a settlement agreement).

Burset, 631 F.3d 592, 596 (1st Cir. 2011). Where the well-pleaded facts and reasonable inferences drawn in plaintiffs' favor do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not shown – that the pleader is entitled to relief. Ashcroft v. Iqbal, 556 U.S. 663, 678 (2009); Maloy v. Ballori-Lage, 744 F.3d 250, 252 (1st Cir. 2014) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

### III.  DISCUSSION

   A. First Amendment

In essence, plaintiffs complain defendants required LaSalle to give forced testimony against his previous supervisor in a disciplinary proceeding in order to benefit from a reinstatement offer (Docket No. 4 at ¶¶ 116, 120, 128, 144, 160).[4] So the court evaluates the claim under the compelled speech component of the First Amendment. See, United States v. United Foods, Inc., 533 U.S. 405, 410 (2001)(noting that the First Amendment's protection is multifaceted, preventing the government from prohibiting speech, and from compelling individuals to express certain views).

The compelled speech protection encompasses the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration and adherence. Agency for Intern. Development v. Alliance for Open Society Intern., Inc., --- U.S. ---, 133 S.Ct.

---

[4] That is plaintiffs' only claim under the First Amendment. Even so, to establish a *prima facie* case of political discrimination, a plaintiff must allege that: (1) he and defendant have opposing political affiliations, (2) the defendant is aware of the plaintiff's affiliation, (3) an adverse employment action occurred, and (4) political affiliation was a substantial or motivating factor for that adverse employment action. García-González v. Puig-Morales, 761 F.3d 81, 96 (1st Cir. 2014). But here, LaSalle and codefendants Alicea Flores, Oppenheimer Soto, and Méndez are all affiliated with the PDP (Docket No. 4 at ¶¶ 19, 21, and 22). The complaint is silent as to the political affiliation of codefendants Hernández Pérez and Meléndez. Id. at ¶¶ 23 and 24. None of the 180 allegations in the complaint state that any adverse employment action LaSalle may have suffered was due to his political affiliation. And in opposing the motion to dismiss, plaintiffs state that LaSalle "does not conclude that defendants discriminated against him based on his political affiliation" (Docket No. 25 at p. 10). Thus, even if plaintiffs' claim were construed as one for discrimination on account of LaSalle's political affiliation, it would fail.

2321, 2327 (2013); Turner Broadcasting System, Inc. v. F.C.C., 512 U.S. 622, 641 (1994).[5] However, review of government employment decisions rests on different principles than review of restraints imposed by the government as sovereign. Engquist v. Oregon Dept. of Agr., 553 U.S. 591, 598 (2008). The government is recognized far wider authority, discretion, and leeway in its dealings with citizen employees than it is allowed when it brings its power to bear on citizens at large. Borough of Duryea, Pa. v. Guarnieri, --- U.S. ---, 131 S.Ct. 2488, 2497 (2011); Engquist, 553 U.S. at 598.

On this basis, when citizens enter government service, they must accept limitations on their freedom linked to the unique nature of the government's interest in managing its administrative affairs, operations, and workforce to ensure satisfactory provision of public services. Garcetti v. Ceballos, 547 U.S. 410, 418 (2006); Borough of Duryea, Pa., 131 S.Ct. at 2497. As long as employees invoke speech rights as citizens about matters of public concern, they must face only those restrictions appropriate for their employers to operate effectively and efficiently. Garcetti, 547 U.S. at 418. Conversely, if those rights do not involve a matter of public concern, the employee has no first amendment cause of action based on his or her employer's reaction. Connick v. Myers, 461 U.S. 138, 147 (1983); Garcetti, 547 U.S. at 418.

With that in mind, not all matters related to a government office are of public concern for first amendment purposes. Whether they are so depends on context, content, and form. Borough of Duryea, Pa., 131 S.Ct. at 2501. Public concern is not usually involved when speech rights are invoked in connection with individual workplace disputes and grievances. Id.; Hall v. Ford, 856

---

[5] The principle has been applied in a variety of contexts, such as refusal to participate in compulsory flag salute and pledge of alliance; refusal to allow one's property to carry messages for others; refusal to reveal one's identity in distributing campaign literature; and refusal to include in a parade, a group whose message the parade's organizer does not wish to send. See, Olivencia-de-Jesús v. Puerto Rico Elec. Power Auth., 85 F.Supp.3d 627, 630 (D.P.R. 2015), and cases cited therein.

F.2d 255, 258 (D.C. Cir. 1988). And absent the most unusual of circumstances, a federal court is not the appropriate forum in which to review a personnel decision taken by a public entity in reaction to the employee's behavior. Engquist, 553 U.S. at 600. The First Amendment does not empower public employees to constitutionalize ordinary employee grievances. Garcetti, 547 U.S. at 420; Engquist, 553 U.S. at 607.

From that perspective, this case is not unlike Olivencia-de-Jesús, 85 F.Supp.3d at 631, where the plaintiff – a former PREPA employee – brought a compelled speech claim based on facts similar to the ones plaintiffs predicate their claim on, namely, that LaSalle was required to offer testimony against a managerial employee as part of a settlement offer in exchange to return to work. Applying the principles discussed above, the court concluded the allegation was insufficient to raise a colorable compelled speech claim. Id. at 631 ("…[T]hat Olivencia was required to offer testimony against a managerial employee as part of a settlement offer in exchange to return to work, does not transform that speech into speech protected by the First Amendment any more than his [rejection] of PREPA's offer becomes a violation of constitutionally-protected freedom of speech").

In that regard, the court found that "PREPA had a legitimate interest in obtaining the testimony, as it purportedly related to managerial employees who participated in … irregularities underlying plaintiffs' suspensions and terminations from employment. Its judgment called for, or contemplated a settlement conditioned upon that testimony." Id. at 631-632. Such is the case here. There is no reason to deviate from that ruling. Whether plaintiff could have provided the testimony but opted not to for personal reasons lacks constitutional significance. That was a term to be satisfied if PREPA was to settle. A party cannot be forced to settle in terms other than those it

believes will protect its interests. Id. at 632 (citing Ogle v. Columbia Gas Transmission, LLC, 2014 WL 3895500, *5 (S. D. Ohio August 8, 2014).

What is more, even though LaSalle subscribed a settlement agreement stating that he agreed to act as a witness for PREPA in disciplinary proceedings resulting from an investigation against managerial employees (Docket No. 21, Exh. 1 at ¶ 4(B)), there is no indication that he ever testified or proffered evidence against anybody under any circumstances. Plaintiffs even characterize that agreement as invalid, and assert that the suspension violated the Collective Bargaining Agreement and an arbitrator's decision (Docket No. 4 at ¶¶ 12, 90).[6] And by their account, codefendant Meléndez – PREPA's in-house counsel – said LaSalle would not make a good witness for PREPA. Id. at ¶¶ 144, 145.

On these allegations, there is no colorable compelled speech claim. The First Amendment does not require displacement of managerial discretion by judicial supervision in determining how best to approach potential settlement dynamics in the context of this type of garden-variety workplace dispute. See, Olivencia-de-Jesús, 85 F.Supp.3d at 632 (so stating)(citing Garcetti, 547 U.S. at 543; and NASA v. Nelson, 131 S. Ct. 746, 758 (2011)). Hence, the claim must be dismissed.

B. Fifth Amendment

Plaintiffs allege defendants violated the Fifth Amendment by not affording LaSalle due process of law, and in conditioning his employment on a waiver of his right not to incriminate himself (Docket No. 4 at ¶¶ 150, 153, 167). The Fifth Amendment Due Process Clause applies only to actions of the federal government, as opposed to those of state or local governments.

---

[6] Whether the settlement agreement is invalid need not be evaluated at this juncture given the grounds for dismissal discussed in the text.

Martínez-Rivera v. Sánchez-Ramos, 498 F.3d 3, 8 (1st Cir. 2007). To the extent none of the defendants has been alleged to be a federal actor, the due process claim under the Fifth Amendment must be dismissed.

Plaintiffs point out that LaSalle was coerced into making statements (Docket No. 4 at ¶ 24). But the pleadings suggest otherwise, as during the disciplinary hearing PREPA warned him that his answers could be used against him in a criminal prosecution. If that were the coercion plaintiffs are claiming for, they could not succeed, since "mere coercion does not violate the text of the Self-Incrimination Clause absent use of the compelled statements in a criminal case against the witness." Chavez v. Martinez, 538 U.S. 760, 769 (2003). There is no allegation that LaSalle was compelled to be a witness against himself in a criminal case. Id. at 772-773. Thus, the self-incrimination claim must be dismissed.

C. Fourteenth Amendment

Plaintiffs allege that LaSalle had a "property interest in his continued employment of which he could not be deprived without due process" (Docket No. 4 at ¶ 153). They contend that defendants failed to afford LaSalle an informal hearing prior to his summary suspension, and for the same reason, maintain defendants violated the Fourteenth Amendment. Id. at ¶ 150.

To state a procedural due process claim, a plaintiff must allege first that it has a property interest as defined by state law and, second, that defendants, acting under color of state law, deprived it of that interest without a constitutionally adequate process. Marrero-Gutiérrez v. Molina, 491 F.3d 1, 8 (1st Cir. 2007). That inquiry narrows to whether LaSalle received constitutionally adequate process. Id. (citing PFZ Props., Inc. v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991)).

Due process requires only that the pre-termination hearing fulfill the purpose of an initial check against mistaken decisions – essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action. Id. (citing Cepero-Rivera v. Fagundo, 414 F.3d 124, 135 (1st Cir. 2005)). In this initial check, the employee should receive notice of the charges, an explanation of the evidence that supports those charges, and the ability to refute that evidence. Id. Any standard calling for more process would unduly impede the government in removing poorly performing employees. Id.

In the complaint, plaintiffs acknowledge that on August 19, 2013, LaSalle received a letter with PREPA's allegations against him (Docket No. 4 at ¶¶ 57, 65-67).[7] Then he was summoned to, and appeared at a hearing to discuss those charges. Even though he was granted the opportunity to be heard, he was advised to invoke his right not to testify when questioned on the alleged misconduct. After the hearing, he was suspended and his medical insurance coverage cancelled. Id. at ¶¶ 107, 111.

From the pleadings, pre-termination events provided LaSalle with a constitutionally adequate process. See, Feliciano-Angulo v. Rivera-Cruz, 858 F.2d 40, 43-44 (1st Cir. 1988)(holding that due process requires no irreducible combination of pre and post-termination hearings). Consequently, the fourteenth amendment claim must be dismissed.

D. Conspiracy

Plaintiffs fault defendants with conspiring with UTIER and with each other to deprive La Salle of constitutional rights (Docket No. 4 at ¶¶ 8, 10, 19, 21-24). The First Circuit has recognized a civil conspiracy cause of action under Section 1983. See, Landrigan v. City of Warwick, 628 F.2d

---

[7] Namely, that he had (1) repeatedly been late; (2) misused PREPA property; (3) falsified documents; (4) limited PREPA's production; (5) committed theft and embezzlement; and (6) abandoned his employment in violation of Rules of Conduct 1, 17, 24, 27, 31, and of Note 1.

736, 742 (1st Cir. 1980). "A civil rights conspiracy as commonly defined is a combination of two or more persons acting in concert to commit an unlawful act . . . the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another." LeBaron v. Spencer, 527 Fed.Appx. 25, 33 (1st Cir. 2013) (citing Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008)).

In order to make out an actionable conspiracy, a plaintiff must show a conspiratorial agreement as well as an actual abridgment of some federally-secured right. Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001). Federal courts have come to insist that the complaint state with specificity the facts that, in the plaintiff's mind, show the existence and scope of the alleged conspiracy. See, Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977) and cases cited therein. Conclusory allegations of conspiracy are impuissant to state a claim. Brennan v. Hendrigan, 888 F.2d 189, 195 (1st Cir. 1989).

According to the complaint, the "PREPA defendants in conspiracy with the UTIER used Mr. LaSalle as a pawn in their scheme to secure the plum jobs of NPP supervisors for members of the Popular Democratic Party. In the process, all defendants violated Mr. LaSalle's Fifth and Fourteenth Amendment rights" (Docket No. 4 at ¶ 8). Also, they maintain that "PREPA, acting through Mr. Alicea Flores, Mr. Oppenheimer Soto, Mr. Hernández Pérez, Ms. Méndez, and Mr. Meléndez in conspiracy with UTIER leadership, dismissed plaintiff, even though plaintiff had not violated PREPA's rules." Id. at ¶ 10. And that each individual defendant "conspired with the remaining co-defendants to violate plaintiffs' rights to due process under the First, Fifth and Fourteenth Amendments." Id. at ¶¶ 19, 21, 22, 23, 24.

Even assuming these allegations show a conspiratorial agreement, plaintiffs did not include specific facts plausibly supporting the inference that defendants abridged LaSalle's federally

protected rights. As pointed out earlier, conclusory statements are insufficient to state a claim. Therefore, the conspiracy action must be dismissed.

### E.  Puerto Rico Claims

Federal courts may decline to exercise supplemental jurisdiction over a plaintiff's state claims when the federal claims that gave it original jurisdiction are dismissed. See, 28 U.S.C. § 1367(c)(3)(so specifying). Because the federal claims against the defendants will be dismissed, the remaining state claims must be dismissed, albeit without prejudice. Rivera-Díaz v. Humana Insurance of Puerto Rico, Inc., 748 F.3d 387, 392 (1st Cir. 2014); Martínez v. Colón, 54 F.3d 980, 990 (1st Cir. 1995), cert. denied 516 U.S. 987 (1995).

### F.  Injunctive Relief

Since the claims on which plaintiffs predicate their request for injunctive relief will be dismissed, that request must be denied as moot.

## IV.    CONCLUSION

In light of the foregoing, defendants' "Motion to Dismiss" (Docket No. 18) is GRANTED. Plaintiffs' claims are DISMISSED, albeit the dismissal of claims brought under Puerto Rico law is WITHOUT PREJUDICE. Judgment will be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 10th day of November, 2015.

            S/Pedro A. Delgado-Hernández
            PEDRO A. DELGADO-HERNÁNDEZ
            United States District Judge